UNITED STATES DISTRICT COURT FILED
FOR THE DISTRICT OF MASSACHUSETTS OFFICE

UNITED STATES OF AMERICA 2005 MAR -7 P 2:53    Crim. No. 1:99CR10035-001

v.                          U.S. DISTRICT COURT PETITION PURSUANT TO 28 U.S.C.
                            DISTRICT OF MASS § 2255.
ROBERTO JOSE,
        Petitioner,

_____    **05 - 10423 RGS**

        The petitioner, Roberto Jose, was sentenced to a term of
imprisonment of 151 months, following a plea of guilty, in the
United States District Court, for the District of Massachusetts, to
one count of Conspiracy to Possess with Intent to Distribute
Cocaine and Cocaine Base pursuant to 21 U.S.C. § 846 and two counts
of Possession with intent to Distribute Cocaine Base pursuant to 21
U.S.C. § 841(a)(1).

        The petitioner appealed to the United States Court of
Appeals for the First Circuit, asserting that the plea was not
knowingly, voluntarily and or intelligently entered, and based on
the district court's coercion. The conviction was affirmed in
United States v. Roberto Jose, No. 01-1931 (1st Cir. 2004). Counsel
for the petitioner, Thomas Stylianos, Esquire, informed the
petitioner that, "he was no longer counsel" (Annexed letter),
however, the petitioner asserted in a reply, that counsel was
required to file a writ of certiorari to the United States Supreme
Court prior to the 90 day cut off date of March, 2005.

        Procedural Background

        The petitioner was indicted by a sitting federal grand jury
for the District of Massachusetts, and charged with one count of
conspiracy to possess with intent to distribute cocaine and cocaine
base, in violation of 21 U.S.C. § 846, and two counts of possession

with intent to distribute cocaine base, in violation of 21 U.S.C. §
841(a)(1). Neither of these two charges listed the weight amount of
the controlled substances; and the first count was a poly-substance
"general verdict" charge. [1/]

The petitioner originally pled not guilty and proceeded to
trial which commenced on February 26, 1999. Following the first day
of trial, the petitioner discharged his attorney, and requested a
continuance to retain new counsel. The petitioner claimed that his
counsel was not defending him, that he requested a fee, that
counsel informed him that he must plead guilty there did not appear
to be a defense to the government's case, that he failed to
interview important factual witnesses prior to trial, and that
counsel was acting against the petitioner's interests.

Over the petitioner's objection, the district court
recommenced trial, and sat discharged counsel at the defense table.

Following the end of the first day of trial, the petitioner
informed counsel that he wished to plead guilty. The district court
granted the petitioner's change of plea. A presentence report was
ordered.

_____

1/

The Honorable Richard G. Stearns, USDJ, presided over this
proceeding. The petitioner was represented by Raymond E. Gillespie,
of 875 Massachusetts Avenue, Cambridge, MA 02139. The petitioner is
a non-English speaking native of Dominican Republic who had at the
time of the trial, 12 years of education in Dominica.
Mr. Gillespie was assigned for representation under the CJA
plan, and requested a fee for representing the petitioner.

2/

As of this writing, the petitioner informed counsel to file
a writ of certiorari; as such, the conviction is not yet final.

II.  THE MOVANT'S SENTENCE IS UNCONSTITUTIONAL IN
     LIGHT OF THE SUPREME COURT'S RULING IN
     UNITED STATES v. BOOKER, 543 U.S. ___ (2005).

The United States Supreme Court recent ruling in United
States v. Booker, interpreted and expanded it's previous decisions
in Blakely v. Washington, and Apprendi v. New Jersey, by holding
that the Constitution requires that any fact that increases a
criminal defendant's sentence must be determined beyond a
reasonable doubt by a jury or admitted by the defendant. Blakely,
124 S.Ct. at 2537 (2004); Apprendi, 530 U.S. 466 (2000). The
Booker decision, notwithstanding the remedial Opinion, renders the
Movant's sentence Unconstitutional to the extent that it was
increased based solely on judicial determination of fact using
only a preponderance of evidence standard.

    A. Booker requires that any fact that increases a
       defendant's sentence be admitted by the defendant or
       proven to a jury beyond a reasonable doubt.

Booker is the most recent of a series of decisions in which
the Supreme Court has addressed the constitutionality of various
criminal sentencing schemes. In Apprendi v. New Jersey, 530 U.S.
466, 490 (2000), the Supreme Court declared that, "any fact that
increases the penalty for a crime beyond the prescribed statutory
maximum [other than the fact of a prior conviction] must be
submitted to a jury and proven beyond a reasonable doubt."

The Supreme Court based it's Apprendi decision on the
Constitution's Fourteenth Amendment proscription of any
deprivation of liberty without due process of law and the Sixth
Amendment right to a speedy trial and a public trial by an
impartial jury. Apprendi, at 476±77 (quoting United States v.

Gaudin, 515 U.S. 506, 510 (1995).

In Apprendi, the Supreme Court cited In re Winship, 397 U.S. 358 (1970), as precedent for the notion that the due process clause guarantees a criminal defendant the right to have every element that increases a sentence beyond a statutory maximum, proven beyond a reasonable doubt. The Court pointed out that, in re Winship established that the reasonable doubt standard is vital to criminal procedure, and that "since Winship, we have made clear beyond peradventure that Winship's due process clause and associated jury protections extend, to some degree, "to determinations that [go] not to a defendant's guilt or innocence, but simply to the length of his sentence." Apprendi, 530 U.S. at 484 (quoting Almendarez-Torres v. United States, 523 U.S. 224, 251 (1998) (Scalia, J., dissenting)).

First, the Blakely Court noted that Apprendi replaced a regime "in which a defendant, with no warning to either his indictment or plea, would routinely see his maximum potential sentence balloon from as little as 5 yeays to as much as life imprisonment ... based not on facts proven to his peers and found beyond a reaosnable doubt, but on fact extracted after trial from a report compiled by a probation officer, who the judge thinks more likely got it right, than wrong." 124 S.Ct. at 2542.

The Blakely Court vastly expanded the scope and effect of Apprendi. Blakely and it's progeny Booker, broke new ground by establishing that "the statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant.. In other words, the relevant 'statutory maximum' is not the

maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without finding additional factors." Id. at 2537.

In United States v. Booker, 543 U.S. ___ (2005), the Court in unanticipated dual concurring Opinions, applied Blakely to the Federal Sentencing Guidelines and reaffirmed their previous holding in Blakely. Without debating the Remedial Opinion insofar as it has no bearing on the Movant's instant assertions, the Movant contends that his sentence was based, in part, on what Booker, effectively declared were separate crimes from the crimes for which he was convicted by the jury. The trial court's assessment of the drug quantity, leadership/organizer role, and weapon's enhancement was neither admitted by the Movant, or found by the jury beyond a reasonable doubt. As such, the Movant's sentence is Unconstitutional.

---

8/

    Justice Stevens delivered the Opinion of the Court in part, holding that, "[T]he Sixth Amendment is violated by the imposition of an enhanced sentence based on the sentencing judge's determination of a fact that was not found by a jury beyond a reasonable doubt, or admitted by the defendant." Justice Scalia, Justice Thomas, and Justice Ginsburg joined in this portion of the Opinion. Chief Judge Rhenquist, Justice O'Conner, Justice Kennedy, and Justice Breyer dissent and join in their "remedial" Opinion, concluding that 18 U.S.C. § 3553(b)(1), is incompatible with todays' Sixth Amendment holding and severed and excised from the SRA of 1984, that statute, making the Guidelines effectively advisory. United States v. Crosby, No. 03-1675, ___ F.3d ___ (February 3, 2005) (2nd Cir. 2005).

    As the petitioner's conviction is not yet final, United States v. Booker, supra, applies to the petitioner, and retroactivity is not a factor here; however, for purposes of this petition, it is asserted that Booker does fall under the second exception to the Teague requirement.

The Applicability of <u>United States</u> v. <u>Booker</u> to the Instant Case

The petitioner asserts that the district court violated his Sixth Amendment right to jury trial, in that his sentence was based on what the Supreme Court stated in <u>Booker</u>, 543 U.S. ___ (2005), 125 S.Ct. 738, 2005 LEXIS 628, were separate crimes from those for which he was convicted. First, the district court's judicial determination as to the relevant "role enhancement" under USSG § 3B1.1(a), was neither charged to the jury and found beyond a reasonable doubt or admitted by the petitioner. As such, the 2 point role enhancement under the then "mandatory guideline scheme" must be vacated.

Next, as the petitioner did not admit to sufficient facts to support the district court's imposition as to the weight component, the imposition of those facts, which as the Supreme Court stated in <u>Booker</u>, is unconstitutional, the petitioner asserts that the "Rule of Lenity" must be applied and the lowest possible penalty provision be assessed.[*]

---

[*]

In <u>United States</u> v. <u>Crosby</u>, Docket No. 03-1675, ___ F.3d ___ (2d Cir. Feb. 2, 2005) (Slip Op. at *32), the Court expressed no views concerning the application of <u>Booker</u> to cases arising on collateral review, nor whether the Ex Post Facto Clause would prohibit a sentencing court from imposing a more severe sentence above a statutory minimum which might yield a lower sentence had the guidelines remained mandatory. (Citing <u>United States</u> v. <u>Broderson</u>, 67 F.3d 452 (2d Cir. 1995). It is asserted however, that Justice Breyer's Remedial Opinion, clarifies this matter. "[A]s these dispositions indicate, we must apply today's holding, both the Sixth Amendment holding ... to all cases on direct review or not yet final." (citing <u>Griffith</u> v. <u>Kentucky</u>, 479 U.S. 314 (1987)).
As the petitioner expressly informed counsel to file a writ of <u>certiorari</u>, the petitioner's case is not yet "final" under <u>Griffith</u>, <u>supra</u>.

On January 12, 2005, the Supreme Court decided <u>United States</u> v. <u>Booker,</u> and <u>FanFan</u>, which essentially upheld the Court's previous June 24, 2004 decision in <u>Blakely</u> v. <u>Washington</u>, 124 S.Ct. 2531 (2004). The Court, in <u>Booker</u>, held that "[T]he Sixth Amendment is violated by the imposition of an enhanced sentence based on the sentencing judge's determination of a fact that was not found by a jury beyond a reasonable doubt, or admitted by the defendant." (Stevens, J., Opinion of the Court).

Without re-hashing the applicability of <u>Booker</u> in relation to the Movant's sentencing procedure, the Movant turns directly to the question of whether <u>Booker</u> and <u>FanFan</u>, may be applied on collateral review in the instant case. The answer to this question must be yes.

In <u>Teague</u> v. <u>Lane</u>, 489 U.S. 288 (1989), the Supreme Court stated that, as a general rule, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rule is announced." <u>Id.</u>, at 310. Admittedly, if <u>Teague's</u> general rule applies, the Movant cannot reap the benefit of <u>Booker</u>, because <u>Teague</u> will bar the retroactive application of <u>Booker</u> to the Movant's conviction. Here, there are several reasons why <u>Teague</u> is inapplicable here.

First, the <u>Teague</u> retroactivity bar only applies if the case announces a "new procedure rule", it is inapplicable if the new case involves the substantive construction of a criminal statute. <u>Bousely</u> v. <u>United States</u>, 523 U.S. 614 (1998); <u>Murr</u> v. <u>United States</u>, 200 F.3d 895, 905 (6th Cir. 2000). It is quite apparent that <u>Booker</u> was "new", as it profoundly altered the prevailing law in every Circuit throughout the United States. However, a more challenging question is whether the new <u>Booker</u>

rules are procedural. (Teague bar wholly inapplicable) or substantive (Teague bar applies unless subject to an exception).

In Booker, and FanFan, the question was "whether the Sixth amendment was violated by a judge's determination based upon a preponderance of evidence, whereas that factor was not admitted by the defendant or proven to the jury beyond a reasonable doubt." The answer was in the affirmative.

With respect to the first prong of the holding, the Supreme Court clarified the difference between an "element of the offense" and a "sentencing factor". It is noted that historically, "facts that exposed a defendant to a punishment greater than that authorized by law, were by definition, "elements" of a separate offense. The Court recognized that "when a judge's finding based on a mere preponderance of the evidence authorizes an increase in the defendant's sentence, it violates the Sixth Amendment right to jury trial. Due to the elemental nature of facts that expose a defendant to a greater punishment than that authorized by the jury's verdict, the Court concluded that such facts must be submitted to a jury and found beyond a reasonable doubt, or admitted by the defendant. booker, 543 U.S. ___ (2005); Blakely, 124 S.Ct. at 2534 (2004).

The fact that the Supreme Court engaged in such deliberations in order to arrive at it's conclusion indicates the substantive nature of it's decision. In Bousely, the Supreme Court considered the retroactivity application of it's decision in Bailey v. United States, 516 U.S. 137 (1995), which interpreted the meaning of "using" a firearm in violation of 18 U.S.C. § 922(c). The Court found Teague inapplicable to Bailey since that

decision construed the meaning of a criminal statute and was thus,
substantive in nature. Although Booker was decided in the context
of the United States Sentencing Guidelines, the Court's holding
was that the Sixth Amendment challenge was not limited to the
"congressional statute" as the Circuits' have held progeny to
Apprendi. The Court also drew the distinction from Apprendi v. New
Jersey, 530 U.S. 466 (2000) and the present case. First, Apprendi
did not raise a Sixth Amendment Constitutional right to jury
trial; rather, Apprendi's claim relied on the "Due Process Clause"
of the 5th and 14th Amendments. Second, Apprendi was held to be a
procedural rule change, rather than substantive. Rather, Booker's
holding encompasses a substantive construction, based on the Sixth
Amendment, of "any particular fact that the law makes essential to
the punishment." See, United States v. Buckland, 289 F.3d 558 (9th
Cir. 2002), whose decision directs us that the relevant inquiry in
determining whether a fact or element must be charged in an
indictment is whether it "may increase a defendant's exposure to
penalties," regardless of it's label. Id. at 566.

     Moreover, even if the rules in Booker are deemed
"procedural" rather than "substantive", the Teague bar is still
inapplicable if the new rule falls within one of the two narrow
exceptions to the retroactivity principle. As pertinent here, the
second Teague exception applies if the new rule is a "watershed"
rule of criminal procedure that implicates the "fundamental
fairness" of the proceeding. Teague, supra at 311-12. In order to
fall within this exception, the "new rule", must not only improve
the accuracy of the proceeding, but also, "alter our understanding

of the bedrock procedural elements essential to the fairness of the proceeding." Sawyer v. Smith, 497 U.S. 227, 242 (1990).

For a number of reasons, Booker qualifies as a "watershed" or "bedrock" change in the law that requires retroactive application under the second Teague exception.

First, in Booker, the Court held that, "[F]or reasons explained in Jones, Apprendi and Ring, the requirements of the Sixth Amendment were clear." As the enhancements became greater, the jury's finding of the underlying crime became less significant indeed. See, Jones, 526 U.S. at 330 (Judge's findings increased the maximum sentence from 15-25 years); Booker, (from 262 months to a life sentence); FanFan, (from 78 to 235 months); United States v. Rodriguez, 73 F.3d 161, 162 (CA7 1996) (Posner, J., dissenting from denial of rehearing en banc) (from approximately 54 months to life sentence); United States v. Hammoud, 381 F.3d 316 (CA4 2004) (en banc) (Moltz, J., dissenting) (actual sentence increased from 57 months to 155 years). Booker, (Stevens, J.,) ("[A]s is thus became clear that sentencing was no longer taking place in the tradition that Justice Breyer invokes, the Court was faced with preserving an ancient guarantee under a new set of circumstances.") (emphasis added). 12/

---

12/

The Supreme Court granted certiorari to each of these cases, and reversed the Circuit Court's holding respectively, and remanded to the district courts' for a determination consistent with the Court's opinion. (citations omitted) (January 25, 2005, Cr.L. Vol.76)

Moreso, Justice Stevens in Booker held that, "[T]he principles addressed in Booker are not the product of recent innovations in our jurisprudence, but rather have their genesis in the ideals of the constitutional tradition assimilated from the common law." The Framers of the Constitution understood the threat of 'judicial despotism' that could arise from arbitrary punishments upon arbitrary convictions without the benefit of a jury in criminal cases. (citing, The Federalist, No.83, pg.499 (C. Rossiter ed.1961) (A. Hamilton).

Similarly, relying in part upon Justice Breyer's "remedial" opinion in Booker, 543 U.S. at ___ (2005), who stated, "[A]s these dispositions indicate, we must apply today's holding, both the Sixth Amendment holding ... to all cases on direct review." (relying on Griffith v. Kentucky, 479 U.S. 314, 328 (1987)) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.")

The term "clear break" is discussed in In re Turner, 267 F.3d 225 (3d Cir. 2001) for instance. ("[C]lear break is defined as altering our bedrock procedure based upon a new interpretation of the Constitution."); Forbes v. United States, 262 F.3d 143 (2d Cir. 2001); Ashley v. United States, 266 F.3d 671 (7th Cir. 2001); United States v. Lopez, 248 F.3d 427 (5th Cir. 2001).

Applying these principles to the case at hand, Booker evinces in general, a radical shift in criminal procedures that effect all sentencing, and the implications of the new rule are

particularly significant and effects the "bedrock procedural element" essential to the fundamental fairness of a criminal proceeding, as made clear in In re Winship:

> The reasonable doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of conviction resting on factual error. The standard provides concrete substance for the presumption of innocence, that bedrock "axiomatic and elemental principle whose enforcement lies at the foundation of the administration of our criminal law." "[A] person accused of a crime...would be at a severe disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case..."

Booker, 543 U.S. at ___ (2005). [13]/

---

[13]/

    As Justice Byron White, writing for the majority in Duncan v. Louisiana, 391 U.S. 145, 155 (1968) made clear:

> The guarantees of a jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which the law should be enforced and justice administered A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government. Those who wrote out Constitutions knew from history and experience that it was necessary to protect against unfounded criminal charges brought to eliminate enemies and against judges too responsive to the voice of higher authority. The Framers of the Constitutions strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge.

The criminal law is "concerned not only with guilty or innocence in the abstract", but also with the degree of culpability assessed. Mullaney v. Wilbur, 421 U.S. 684, 697 (1975). Since culpabilty is primarily reflected by the severity of the sentence imposed, any fact bearing on punishment, and therefore stigma, is an element of that crime charged subject to the limitations of In re Winship, supra. Mullaney, 421 U.S. at 698, n.24 (holding that a State cannot circumvent Winship protections merely by characterizing the elements that constitute different crimes as sentencing factors.)

In more recent jurisprudence, the Supreme Court has not waivered in it's committment to look past labels when deciding whether a certain sentencing factor functions as an element of the crime. For example, in Ring v. Arizona, 536 U.S. at 609, the Supreme Court explained that the "aggravating circumstances" of Arizona's capitol sentencing statute operate as the functional equivalents of an element of a greater offense. See also, Sattazahn v. Pennsylvania, 537 U.S. 101, 112 (2003) ("murder plus one or more aggravating circumstances is a separate offense from murder simpliciter.")

In Shiro v. Summerlin, 124 S.Ct. 2519 (2004), the Court held that Ring, supra, which applied Apprendi to Arizona's capitol sentencing scheme, was not retroactive because it did not implicate the accuracy and reliability of the sentencing proceeding. However, while Ring implicated the Sixth Amendment right to a jury trial, it addressed a sentencing in which a judge determined facts that increased a sentence beyond the statutory maximum under the

reasonable doubt burden of proof. <u>Arizona</u> v. <u>Ring</u>, 200 Ariz.267,
279 (2001), vacated by <u>Ring</u> v. <u>Arizona</u>, 536 U.S. 584. In <u>Summerlin</u>,
124 S.Ct. at 2525, the Court decided that <u>Ring</u> should not be
applied retroactively because, citing scholars debated the accuracy
of juries and judges, it was not convinced that a judicial
determination would so diminish accuracy that there would be an
"impermissibly large risk" of punishing conduct the law does not
reach.

Because the preponderance of evidence standard implicated in
<u>Booker</u> creates a "far greater risk of factual errors that result in
convicting the innocent, and while the reasonable doubt standard is
a 'prime instrument for reducing that risk, it is clear that the
lesser standard so seriously diminishes accuracy that it creates an
impermissibly large risk of punishing conduct that the law does not
reach." Thus, <u>Booker</u> must be applied retroactively to cases under
collateral review.

G. The Movant Can Show Cause For Not Bringing His Claim on Direct
   Appeal and Demonstrate Prejudice.

To bring an action under 28 U.S.C. § 2255, for unappealed
errors to which no contemporaneous objections were made, a
convicted defendant must show both (1) "cause" excusing his
procedural default and (2) "actual prejudice" resulting from the
errors of which he complains. <u>Belford</u> v. <u>United States</u>, 975 F.2d
310, 313 (7th Cir. 1992). In this case, the Movant can show cause
for not previously raising the constitutional claims argued here
because <u>Booker</u> did not exist, nor did the precedent surrounding the
Sixth Amendment challenge as mounted in <u>Booker</u>, at the time of the

Movant's sentencing phase and direct appeal. Further, it's new rule was so novel that the Movant could not have foreseen it. The Movant can show prejudice resulting from the constitutional violation in that it increased his sentencing exposure by a factor of 100%.

> 1. In order to bring an action under § 2255 for an error he did not previously raise, a defendant must show "cause and prejudice" for his failure to raise the error.

Under § 2255's cause and prejudice test, "cause" must be something that cannot be fairly attributable to the convicted defendant. Coleman v. Thompson, 501 U.S. 722, 753 (1991). An example of adequate cause is a showing that the legal basis for the claim was not reasonably available to counsel. Id. at 753 (quoting Murray v. Carrier, 477 U.S. 478, 492 (1986). The claim must be "so novel" as to not have been reasonably available to counsel. Reed v. Ross, 468 U.S. 1, 16 (1984). In addition, the tools available to construct the constitutional claim must not have been present. Engle v. Isaac, 456 U.S. 107, 130 (1982).

"Actual prejudice" is present when the errors in question are shown to have worked to the convicted defendant's actual and substantive disadvantage. Frady, 456 U.S. at 170. Any increase in the actual amount of jail time, even if minimal, can constitute substantial prejudice. Glover v. United States, 531 U.S. 198 (2001)

Under this test, the Movant's failure to mount a challenge to the Judicial determination under the Sixth Amendment right to jury trial, is based on a new constitutional obligation that was so novel when established in, first Blakely v. Washington, 124 S.Ct. 2524 (2004), and then reaffirmed in Booker, 543 U.S. ___ (2005), that it was not reasonably available to counsel on direct appeal.

To be sure, the Guidelines have previously withstood significant Supreme Court scrutiny and have come out on the winning side under Booker, (Justice Breyer's remedial opinion) ("concluding that based upon the majority's opinion, 18 U.S.C. § 3553(b)(1), which makes the Federal Sentencing Guidelines mandatory, is incompatible with today's holding...so modified, the Act which makes the Guidelines mandatory are excised.") Mistretta v. United States, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989); Stinson v. United States, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993); Witte v. United States, 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995); Edwards v. United States, 523 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998); United States v. Watts, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997).

2. Federal Sentencing Law Before Booker/FanFan

Since November 1, 1987, sentences in federal criminal cases have been determined pursuant to the Sentencing Reform Act of 1984 ("SRA"), Pub.L. 98-473, Title 11, §§ 211-238, 98 Stat. 1987 (1984), and the Guidelines issued by the United States Sentencing Commission. See, U.S.S.G. §§ 1A1.1-8F1.1. As it stood prior to the decision in Booker/FanFan, the SRA specified several requirements for selecting an appropriate sentence. Especially pertinent to the adjudication of this application, is section 18 U.S.C. § 3553(b), which provides, in pertinent part:

(b) Application of guidelines in imposing a sentence...

(1) In general, Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance

of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In absence of the applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purpose set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

3. The Remedy Opinion

In the Remedy Opinion, the Court ruled that implementation of the Substantive Opinion required that two provisions of the SRA be "severed" and "excised". Remedy Opinion, 125 S.Ct. at 764. These are subsection § 3553(b)(1), mandating use of the Guidelines, and section 3742(e), which "sets forth standards of review on appeal." Id.

Of course, the "Remedial Opinion" authored by Justice Breyer was certainly not foreseeable. Quite the contrary, there has been a spate of litigation stemming from this excised provision of the statute, with much more to come in the foreseeable future. As the Movant however, was sentenced under the SRA of 1984, and pursuant

to the Supreme Court's long-standing holding that the Guidelines were "mandatory", the Movant's failure to raise an issue of this nature, would have been futile and expressly rejected.

The Petitioner's Actual Prejudice Showing

In this case, the district court found, by a preponderance of the evidence, that "he" was responsible for at least 150 grams of cocaine base. The petitioner did not stipulate as to the weight component, and as such, the correct statutory minimum penalty would have been, absent the judicial finding(s), was 12. The difference between the two were dramatic. The former dictates a sentence of at least 151 months, while the latter, a sentence of possibly 3 years based on the petitioner's criminal history category of I. See, Coleman v. United States, 329 F.3d 77 92d Cir. 2003) (Parker, J., concurring in the judgment) ("A defendant may be guilty of possessing an unspecified amount of substance containing cocaine base under § 841(b)(1)(C), yet innocent of possessing fifty grans or more of a substance containing cocaine base under § 841(b)(1)(A) The Court's finding by a mere preponderance of evidence that Coleman possessed 52.9 grams made the question, to say the least, a close one. The 2.9 grams in controvercy meant all the difference to Coleman because the additional 10 years of incarceration turned on that finding.")

Here, the petitioner's term of imprisonment was increased by a minimum of 100%, based solely on the district court's preponderance finding, which the Supreme Court has held to be unconstitutional. For the reasons articulated, a remand is necessary.

II. <u>The Petitioner's Sixth Amendment Right to Effective Assistance of Counsel was Violated; an Evidentiary Hearing is Required.</u>

Next, the petitioner asserts that his right to effective assistance of counsel was violated by counsel's numerous failures, pre-trial blunders, by counsel's coercive measures in relation to the petitioner's plea, and by counsel's actual conflict of interest in this matter.

The Sixth Amendment guarantees the right to effective assistance of counsel in criminal prosecutions. <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668 (1984). In Strickland, the Supreme Court established a two-prong test to evaluate ineffective assistance claims. To obtain reversal of a conviction, the defendant must prove, (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant.

In the context of a guilty plea, a defendant can satisfy the prejudice prong by demonstrating that but for counsel's deficient performance, a reasonable probability exists that the defendant would not have pleaded guilty and would have insisted on a trial. <u>Hill</u> v. <u>Lockhart</u>, 474 U.S. 52 (1985); <u>U.S.</u> v. <u>Hansel</u>, 70 F.3d 6 (2d Cir. 1995).

In this case, the petitioner maintained his innocence from the onset of this prosecution, and insisted on a trial. The Court assigned counsel under the CJA plan, Raymond Gillespie, who, prior to trial, did not discuss any type of defense with the petitioner. Counsel was non-Spanish speaking, and the petitioner was non-

English speaking. Although the petitioner was provided an interpretor at trial, there was no possible way of the two communicating prior to trial.

During the first day of trial, and early within the opening of the government's case, counsel announced to the Court that the petitioner wanted to discharge him, which was based upon a disagreement which arose on February 26, 2001, jury selection day. The petitiner requested a continuance and for the Court to appoint new counsel, however, the court denied this request and stated, */ that the "trial would commence in two minutes."

After the jury is brought out, and the Government's makes their opening statement, the jury is again taken out of the court. On the record, the Judge discusses the issue of representation and learns that the petitioner does not want counsel to sit at the defendant table. In spite of the petitioner's concerns about counsel, the district court, over the petitioner's objection, sits attorney Gillespie. The trial ensues.

---

*/

The disagreement, which is not part of the record, concerned attorney Gillespie requesting a fee from the petitioner's family in order to "a better job". This fee dispute arose because the petitioner informed counsel that he had no funds to retain an attorney, and that he expected attorney Gillespie to, at the least, speak to the factual witnesses in order to present a defense. Counsel merely informed the petitioner that a guilty plea was advisable.

Further, petitioner wrote a letter to the court, informing him that counsel and he were in a heated discussion of whether or not to plea guilty, and the letter further indicated that the petitioner was concerned about the racial motivation of both counsel and the court. The Judge dismissed the letter.

Trial recommenced the following day, and after more direct testimony, attorney Gillespie informed the court that the petitioner wished to enter a guilty plea to all of the charges.

On Appeal, appellate counsel argued that under First Circuit precedence in U.S. v. Cotal-Crespo, 47 F.3d 1 (1st Cir. 1995), sets out the standard for whether or not there has been a violation of the voluntariness requirement, which is the totality of the substance of what was communicated by the trial court. Essentially, in this case, the reasoning behind the petitioner's choice to plead guilty, does not appear on the record. As such, it is urged that this Court issue an Order pursuant to Rule 7, and 8 of the Rules governing habeas petitions. Specifically, the petitioner asserts that additional information must be gathered from former counsel as to his motivations behind requesting payment from the petitioner, after being assigned under the CJA plan; the circumstances of the "heated discussion" between the petitioner and counsel. Chang v. U.S., 250 F.3d 79 (2d Cir. 2001).

Additionally, the petitioner requests that an evidentiary hearing be held in order to expand the record to include additional information in order for this court to adjudicate on the issues raised. Sanders v. U.S., 373 U.S. 1, 19-20 (1963); U.S. v. Rodriguez, 929 F.2d 747 (1st Cir. 1991).

In this case, the petitioner asserts that the plea that was entered, was not knowingly, voluntarily and or intelligently made, and based upon not only, this Court's coercive measures and dialogue, but counsel's ineffective behavior. Parke v. Raley, 506 U.S. 20 (1992); U.S. v. Arrelano, 213 F.3d 427 (8th Cir. 2000)

("critical question is whether the plea was made voluntarily, knowingly and intelligently.")

To ensure that a plea is made voluntarily, the court must establish that the guilty plea is not the result of force, threats, or promises apart from the plea agreement. Brady v. U.S., 397 U.S. 742 (1970). Although a defendant's testimony at a plea colloquy that his plea is voluntary and creates an additional presumption against later claims of coersion, in this case, based upon the merest reading of the record, it is clearly apparent that the petitioner's plea cannot have been voluntarily entered into.

Counsel's performance, in any regard, cannot be said to have been effective. The petitioner asserted "on record" that he did not feel counsel would do the 'right thing'; and that counsel wanted to charge him for representation. That counsel stated to him, "off record", that if he wanted better representation, he would have to pay a fee. In Cuyler v. Sullivan, the Supreme Court ruled that a defendant can demonstrate a Sixth Amendment violation by showing: (1) that defense counsel was actively representing conflicting interests, and (2) that the conflict had an adverse effect on specific instances of counsel's performance. Cuyler, 466 U.S. 335 (1980). When a defendant alleges that his guilty plea resulted from defense counsel's conflict of interest, the court must inquire further, or the reviewing court will presume a violation of the Sixth Amendment. See, Holloway, 435 U.S. at 484 (1984) (violation of right to effective assistance because trial judge failed to investigate claim of possible conflict of interest.")

Certainly the petitioner made an adequate advancement that he was not pleased with counsel's performance. Via letter to the Court, the petitioner asserted that he was displeased with his attorney and concerned about racist motivation of the Court and Jury; and that counsel requested a fee from the petitioner despite the previous CJA assignment. In review of the record, this writer asserts that the district court merely dismisses the letters contents as a product of bad advise and informs the petitioner of his choices: "So your chaoices are Mr. Gillespie goes foward, and that is going to happen in two minutes. You can go foward, that is going to happen in two minutes. You can plead guilty. That is also a right you have. (March 1, 2001).

After concluding that a trial would not result in a not-guilty verdict, the petitioner informed counsel that he would plead guilty; however, as asserted herein, this decision was not entered into knowingly, voluntarily, or intelligently, and as such, this writ must be granted.

Feb. 23, 2005

Respectfully,

_____

Roberto Jose

---

Pursuant to Rule 5 of the Rules governing habeas petitions, it is hereby requested that the Government furnish the Court and this petitioner with all relevant trial transcripts.

Further, the petitioner invokes the right to Discovery in this matter, and requests that this Court issue an Order to the government mandating that the petitioner be served with the full transcripts in relation to this petition.

Moreover, it is asserted that in order to adjudicate on this claim, the government also must furnish the petitioner with all Discovery Material in this case, as the petitioner asserts his "actual innocence".